UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW LIPA,

        Plaintiff,

                                                 Case Number 07-12950
v.                                             Honorable David M. Lawson

ASSET ACCEPTANCE, LLC,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

This matter is before the Court on the defendant's motion to dismiss this action brought under the Fair Debt Collection Practices Act (FDCPA) and state law for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The defendant argues that the plaintiff's complaint alleges only that the defendant, Asset Acceptance, LLC, sued the plaintiff for an alleged debt without providing the underlying loan agreement or, in the alternative, a timely affidavit of account, which does not make out a violation of the FDCPA according to controlling Sixth Circuit precedent. The plaintiff responded by attempting to distinguish the cited precedent, and then at oral argument held on April 8, 2008 he added a few more reasons that the lawsuit should proceed. The Court allowed additional time for filing supplemental briefs and to permit the plaintiff to move to amend his complaint, if he so chose. The Court reviewed the supplemental filings and now concludes that the plaintiff's complaint cannot be read as expansively as he contends, the complaint as drafted fails to state a cognizable claim, and the plaintiff's proposed amendment is futile and untimely and should not be allowed. Therefore, the Court will grant the motion to dismiss and dismiss the case.

# I.

According to the complaint, on April 16, 2007, the defendant in this case, Asset Acceptance, LLC, sued plaintiff Matthew Lipa in a Michigan state court to collect a debt in the amount of $816.24, apparently resulting from an unpaid credit card obligation. Asset Acceptance did not file the underlying credit agreement with its state-court complaint. Instead, it submitted an "affidavit of account," which read as follows:

**AFFIDAVIT OF ACCOUNT**

I hereby certify and affirm that I, Patricia Conaton, am the Legal Manager of ASSET ACCEPTANCE LLC . . . .

I further state that the said company has purchased and is the owner of a claim against Matthew Lipa, Account Number XXXXXXXX0251, originally with PROVIDIAN FINANCIAL, and the amount of $816.24 is now due and owing with pre-judgment interest continuing to accrue at the rate of 5.000%.

. . .

I further state that the business records of this account received at the time of purchase have been reviewed and the information contained herein was obtained from said business records.

Compl., Ex A., Aff. of Account.

The plaintiff contends that this affidavit was defective under state law because it was not executed within ten days before the complaint was filed; rather, "it was signed about a month before the Summons [was issued]." Compl. at ¶ 19. According to plaintiff Lipa, bringing suit in this fashion – without producing the debt-creating instrument or, alternatively, furnishing a proper account affidavit – constituted a violation of the FDCPA.

On July 16, 2007, the plaintiff filed a complaint in this Court asserting a count under that Act. After setting forth the facts noted above, the plaintiff alleged that the defendant violated several specific sections of the FDCPA consisting of (1) 15 U.S.C. § 1692d, which prohibits "any conduct

the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the debt"; (2) 15 U.S.C. § 1692e(5), which prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken"; (3) 15 U.S.C. § 1692e(10), which prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"; and (4) 15 U.S.C. § 1692f, which prohibits an attempt to collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  Compl. at ¶¶ 22-26.  It is apparent from the factual allegations and subsequent filings, however, that the plaintiff only takes issue with the way in which the defendant brought its collection suit.

The defendant contends that the facts as alleged in the complaint do not establish a violation of any of these statutory provisions, and therefore the complaint fails to state a claim.  The defendant points to *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324 (6th Cir. 2006), in support of its contention that the FDCPA is not violated by a debt collector filing a collection lawsuit without attaching to its suit papers a copy of written proof of the debt.  In his response to the motion, the plaintiff attempts to distinguish *Harvey* on the basis that Harvey never disputed that he owed the amount claimed, whereas Lipa contests the amount of the debt.  At oral argument on the motion, however, the plaintiff raised new arguments.  He insisted that the complaint includes the theory that the defendant failed to validate the debt before it filed suit, and the defendant actually did not own the debt at the time.  He argued that if the complaint cannot be read that broadly, he should be given a chance to amend.  However, in his response to the defendant's motion to dismiss the plaintiff also "agree[d] to dismiss it's [sic] State claims and go to the Jury with just the FDCPA violations."  Pl.'s Resp. at 8.

The Court gave the parties time to file supplemental briefs and told the plaintiff he could move to amend his complaint if he chose. The plaintiff then filed a supplemental brief raising yet another argument: that the motion to dismiss is untimely. He also developed further his arguments that the defendant did not respond to his request to validate the debt in writing, and the defendant was not the true owner of the debt, and he moved to amend his complaint. The validation letter offered by the plaintiff is dated November 28, 2006, and there appears to be no dispute that the defendant received it shortly thereafter. In terms of when the plaintiff first learned of the debt, he writes in the validation letter, "This letter is being sent to you in response to a notice sent to my father's house dated October 18, 2006." Pl's Supp. Br., Ex. 5, Validation Letter at 1. The plaintiff has also submitted an affidavit, not referenced in the complaint (either the original or the proposed amended complaint), wherein he states that the defendant failed to respond to this letter, and he always disputed the amount allegedly owed.

Turning to the claim for lack of ownership of the debt, the plaintiff theorizes that defendant Asset did not own the debt at the time it filed the collection lawsuit because Washington Mutual (which apparently owns Providian Financial, from whom Asset acquired the debt) continued to send the plaintiff bills. The evidence here is rather limited and consists of six bills sent by Washington Mutual from April 27, 2007 to September 27, 2007. The bills were sent to the plaintiff (although he claims he did not receive them because the address was wrong), and they requested payment in the amount of $832.51. The one exception to this is the final bill sent on September 27, 2007, which was an invoice of $0.

If the Court rejects the plaintiff's position that the current complaint is sufficient to proceed with his FDCPA case, the plaintiff requests leave to amend. His proposed amended complaint only

adds language alleging that the defendant did not respond to the plaintiff's demand to validate the debt, and it does not add allegations regarding the non-ownership of the debt. The new factual allegations read as follows:

> 21. Prior to the lawsuit, Plaintiff sent Defendant a validation notice regarding the alleged debt. **(Exhibit 3 - Letter)**
>
> 22. Defendant received this letter. **(Exhibit 4 - Return Receipt)**
>
> 23. Defendant failed to validate the debt and instead sued Plaintiff to collect the alleged debt.

Pl.'s Supp. Br., Ex. 1, Prop. Amend. Compl. at ¶¶ 21-23. The plaintiff then adds the following legal conclusion: "Defendants have violated the FDCPA, 15 U.S.C. § 1692g(b), by continuing to attempt to collect a debt without validating the debt after being asked to do so." Prop. Amend. Compl. at ¶ 30.

In his supplemental brief, the plaintiff asks the Court to either (1) deny the defendant's motion to dismiss, (2) convert the motion to one for summary judgment and deny it as such, or (3) allow the plaintiff to amend his complaint. The defendant continues to assert that *Harvey* requires the conclusion that the complaint fails to state a claim, and the complaint states neither a validation nor lack-of-ownership claim. The defendant also opposes the plaintiff's effort to amend the complaint on the grounds that the proposed amendment would be futile, the plaintiff has committed undue delay, and amendment would be prejudicial.

## II.

The defendant's motion to dismiss is directed to the original complaint. Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.__, __, 127 S.Ct. 1955, 1974 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the nature of the claim and the factual grounds upon which it rests. *Twombly*, 127 S.Ct. at 1964. Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also*

*Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

<div align="center">A.</div>

The main thrust of the plaintiff's complaint in this case is that the defendant filed a defective collection lawsuit in state court because its affidavit of account stated was stale and there was no other written proof of the debt attached to the state court pleadings. The plaintiff reasons, therefore, that the defendant violated the FDCPA by filing this lawsuit without any written proof of the debt, thereby contravening 15 U.S.C. § 1692f (prohibiting attempts to collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law"), 15 U.S.C. § 1692e(10) (outlawing the "use of any false representation or deceptive means to collect or attempt to collect any debt"), and 15 U.S.C. § 1692d (forbidding "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the debt").

There are several reasons why the plaintiff's case lacks merit. Before discussing them, however, the Court will briefly address the plaintiff's contention that the defendant's motion is untimely, which is equally meritless. The plaintiff has seized upon an excerpt from Rule 12(b) that says "[a] motion asserting any of these defenses must be made before a responsive pleading if a responsive pleading is allowed," and argues that since the defendant already filed an answer it waived the defense of failure to state a claim. This argument ignores the clear language stated elsewhere in the Rule that preserves such defenses that are asserted in the first responsive pleading, as the defendant did here. *See* Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses in a responsive pleading or in a motion."). In addition, Rule 12(h)(2) provides that a party may raise the failure-to-state-a-claim defense up to and including trial,

and Sixth Circuit precedent confirms this. As long as a defendant notes the defense in its responsive pleading, "[t]he defense of failure to state a claim upon which relief can be granted is protected from waiver through trial." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 610-11, 611 n.1 (6th Cir. 1995).

Turning to the defects in the plaintiff's theory of liability, it is apparent that controlling Sixth Circuit precedent renders lawful under the FDCPA the conduct the plaintiff describes in his complaint. The Fair Debt Collection Practice Act, 15 U.S.C. § 1692 *et seq.*, was enacted in 1978 to promote fair debt collection by eliminating abusive practices in the collection of consumer debts and by defining the rights of consumers vis-à-vis debt collectors. "The statute is very broad, and was intended to remedy 'what is considered to be a widespread problem.'" *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). Therefore, "[i]n determining whether any particular conduct violates the FDCPA, the courts have used an objective test based on the least sophisticated consumer." *Ibid.* (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)).

In *Harvey*, the Sixth Circuit addressed an FDCPA claim that was substantially similar to the one before this Court. The plaintiff sued a debt collector and the collector's law firm, alleging that they had violated the FDCPA by filing a collection suit without the immediate means of proving their claim. Attached to the collection suit were "two exhibits that listed the account number, the balance, and the statement closing date for each account." *Id.* at 326. However, when Harvey sought discovery to validate the debt, the collectors refused to provide a response and eventually dismissed the suit. Based on these events, the plaintiff claimed the defendants "filed 'a lawsuit to collect a purported debt without the means of proving the existence of the debt, the amount of the

debt, or that Seneca owned the debt.'" *Ibid.* However, the district court held that the plaintiff failed

to state a claim for violation of the FDCPA, and the Sixth Circuit affirmed.

As in this case, the plaintiff in *Harvey* alleged that filing a collection suit without adequate

proof at the time of filing constituted a harassing and oppressive procedure and false representation

in contravention of 15 U.S.C. §§ 1692d and e(10). *Harvey*, 453 F.3d at 329. The court of appeals

rejected this theory. With respect to section 1692(d), the court observed that the activities prohibited

by this provision (such as violent threats, the use of obscene language, and repeated phone calls) are

those "tactics intended to embarrass, upset, or frighten a debtor." *Harvey*, 453 F.3d at 330 (citing

15 U.S.C. § 1692d(1)-(6)). Yet "[t]hese tactics are not comparable to the single filing of a debt-

collection lawsuit:"

> Even when viewed from the perspective of an unsophisticated consumer, the filing
> of a debt-collection lawsuit without the immediate means of proving the debt does
> not have the natural consequence of harassing, abusing, or oppressing a debtor. *Any*
> attempt to collect a defaulted debt will be unwanted by a debtor, but employing the
> court system in the way alleged by Harvey cannot be said to be an abusive tactic
> under the FDCPA.

*Id.* at 330-31.

The Sixth Circuit further dismissed the plaintiff's theory that filing a collection action

without the immediate means of proving the debt equaled a deceptive practice under 15 U.S.C. §

1692e(10). *Harvey*, 453 F.3d at 331-33. After noting some of the common practices considered

deceptive within the meaning of this provision (impersonating a public official, misrepresenting the

amount owed), the court distinguished the case at hand on the grounds that the plaintiff did not

allege a falsehood. *See id.* at 331. As the court explained,

> Harvey never denied in her complaint that she owed Seneca a debt, nor did she claim
> that Seneca and Javitch misstated or misrepresented the amount that she owed. Her
> allegations against Seneca and Javitch therefore do not allege that Seneca and Javitch

made "false representations" or used means that were "deceptive" in the traditional sense. *See* 15 U.S.C. § 1692e(10).

*Id.* at 332. Nevertheless, the plaintiff contended that the defendants' conduct – proceeding on a claim without sufficient proof – was "'analogous to suing on a time-barred debt,'" a practice held by many courts to violate the FDCPA even though it does not involve affirmative misrepresentation. Without deciding the legality of suing on a time-barred debt, the Sixth Circuit rejected this argument by identifying a critical distinction: if there is deception in filing a time-barred collection action, it lies in the implicit representation that the debt can in fact be collected; on the other hand, a person filing suit does not tacitly represent that he has the proof on hand to validate the debt. To quote the court:

> Harvey argues that these cases illustrate by analogy that a lawsuit filed without the immediate means of proving the existence, amount, or true owner of the debt is deceptive. We respectfully disagree. Seneca and Javitch did not implicitly represent by filing the Complaint for Money that they had in hand the means to prove Seneca's claims. Rule 11 of the Federal Rules of Civil Procedure does not require attorneys to ensure that their client can prove its case before filing. Instead, the Rule mandates only that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. Proc. 11(B)(3). Harvey did not allege in her complaint that Seneca and Javitch failed to undertake a reasonable investigation into whether or not Harvey's debt existed; rather, she essentially focused on the contention that Seneca and Javitch did not presently possess the means of proving that debt.
>
> In addition, a number of the cases holding that the filing of a time-barred claim is a deceptive practice under the FDCPA rely on 15 U.S.C. § 1692e(2), which prohibits "the false representation of . . . the character, amount, or legal status of any debt." *See Shorty*, 90 F. Supp. 2d at 1331 ("Common sense dictates that whether a debt is time-barred is directly related to the legal status of that debt . . . [because] a debt cannot be pursued in court . . . [if] it is time-barred . . . ."). On the other hand, a debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim. Seneca and Javitch's alleged actions, therefore, did not misrepresent the legal character of the debt owed.

*Id.* at 333.

The rule from *Harvey* has been applied by other courts in *Deere v. Javitch, Block, & Rathbone, LLP*, 413 F. Supp. 2d 886, 890 (S.D. Ohio 2006) (dismissing FDCPA claim that "essentially allege[d] that more of a paper trail should have been in the lawyers' hands or attached to the complaint"), and *Nickoloff v. Wolpoff & Abramson, LLP*, 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007) ("[T]o the extent that Plaintiff's allegations of harassing and abusing the debtor rest on the fact that Defendants did not posses adequate proof of the debt at the time they delivered the arbitration claim, Plaintiff can prove no set of facts that would entitle him to relief under the FDCPA.").

The plaintiff has alleged no more in this case. He claims that when the defendant sued him, the defendant refused his demand for a copy of the credit agreement. Compl. at ¶ 18. He then avers that the defendant "sued Plaintiff improperly and without proof Plaintiff owed the debt." *Id.* at ¶ 20. These allegations do not differ materially from those discussed in *Harvey*. In both cases, the debtors claim they were harassed, deceived, and abused merely because the creditors did not have (or produce) proof of the debt at the time they filed suits in collection. Yet the Sixth Circuit made it pellucidly clear that, without more, such conduct does not amount to a harassing or oppressive act in violation of 15 U.S.C. § 1692d or deceptive or false means in violation of 15 U.S.C. § 1692e(10). *Harvey*, 453 F.3d at 329.

There is also a defect in the plaintiff's underlying premise that the state lawsuit was defective because the affidavit of account stated was stale. If that proposition were correct, then perhaps an argument could be made that the defendant violated 15 U.S.C. § 1692e(5), which prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken," and 15 U.S.C. § 1692f, which prohibits an attempt to collect "any amount . . . unless such amount is expressly authorized

-11-

by the agreement creating the debt or permitted by law," if the plaintiff alleged additional conduct that would support such claims. However, the plaintiff has not alleged that the debt is time-barred, and (although he says otherwise in his brief) he never in his complaint contested owing the debt or the amount claimed, nor did he allege that the account affidavit was not based on adequate records. And the plaintiff is wrong in his assertion that the state court lawsuit was fatally flawed because of the out-of-time affidavit.

The complaint in this case reads: "Under MCLA 600.2145, Defendant must have an Affidavit signed within ten (10) days of the Summons for it to be a proper substitute to the creditor agreement. The affidavit of account here was signed about a month before the Summons." Compl. at ¶ 19. However, section 600.2145 says no such thing. There is no legal requirement that a creditor attach to its collection complaint either a credit agreement *or* a proper affidavit. Instead, the statute merely prescribes a procedure that, when correctly followed, eases the burden on a creditor seeking to collect a delinquent open account by converting it to an account stated. An open account is an account with a balance which has not been ascertained, and which is kept open in anticipation of future transactions. 1 Am Jur 2d, Accounts and Accounting, § 4 (1994). An account stated consists of "'a balance struck between the parties on a settlement.'" *Keywell & Rosenfeld v. Bithell*, 254 Mich. App. 300, 331, 657 N.W.2d 759, 777 (2002) (quoting *Watkins v. Ford*, 69 Mich. 357, 361, 37 NW 300, 302 (1888)). The statute reads:

> In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due . . . and annexes thereto a copy of said account, and cause[s] a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, *such affidavit shall be deemed prima facie evidence of such indebtedness* . . . . Any affidavit in this section mentioned shall be deemed sufficient if the same is made within 10 days next preceding the . . . filing of the complaint.

Mich. Comp. Law § 600.2145 (emphasis added). Nothing in this language suggests that an account affidavit is a *prerequisite* to bringing a collection action. Rather, "[i]f an account stated exists, an unanswered affidavit . . . creates a prima facie case that the party failing to respond owes the other party the amount stated." *Echelon Homes, LLC v. Carter Lumber Co*, 261 Mich. App. 424, 435, 683 N.W.2d 171, 178 (2004), *rev'd in part on other grounds* 472 Mich. 192, 694 N.W.2d 544 (2005). A proper affidavit therefore shifts to the debtor the burden of going forward with proof that the amount claimed is inaccurate. If the affidavit is defective or is rebutted by the defendant with competent proof, the plaintiff simply is left with the burden to prove its case in the usual fashion. *See Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich. App. 14, 55-56, 436 N.W.2d 70, 90-91 (1989). As the state court of appeals explained in unpublished decisions, Mich. Comp. Laws § "600.2145 is not the only way to establish a claim for an account stated; such a claim can be proven through evidence of an express understanding, or words and acts, and the necessary and proper inferences thereon." *Klochko Equip. Rental Co., Inc. v. Village Green Construction, LLC*, 2003 WL 21398305, *3 (Mich. App. 2003). An "affidavit . . . made more than ten days before the complaint was filed" does not void the collection lawsuit; untimeliness merely "prohibits a court from assigning prima facie evidentiary weight to such an untimely affidavit." *Capital One Bank v. Ringelberg*, 2005 WL 2319125, *1 (Mich. App. 2005).

The plaintiff here has not alleged that the claims in the state court case were false. He merely alleges that there was a technical deficiency, which there was not. In all events, the complaint as filed fails to state a claim under the FDCPA.

## B.

The plaintiff states that his complaint can be read to include a claim that the defendant violated 15 U.S.C. § 1692g(b) by continuing its efforts to collect a debt without validating the debt after it was asked to do so. The plaintiff believes that this theory can be coaxed from paragraph 18 of the complaint, which reads as follows:

> Defendant sued Plaintiff for an alleged debt and would not provide the agreement between the Defendant and creditor showing Plaintiff owed the debt. Defendant attached an Affidavit of Account instead of the credit agreement. **Please see attached Exhibit 2**. Defendant refused to provide a copy of the signed, written proof of a credit agreement between the parties.

Compl. at ¶ 18. By itself, and particularly when read in conjunction with the other allegations contained in the complaint, this paragraph supports only the claim that the defendant filed suit in an improper manner. The sentence, "Defendant sued Plaintiff for an alleged debt and would not provide the agreement between the Defendant and creditor showing Plaintiff owed the debt," immediately precedes the allegation, "Defendant attached an Affidavit of Account instead of the credit agreement." Given this sequence, it is only fair to assume that the second sentence qualifies the first, i.e., that the defendant failed to provide the credit agreement *when it sued*, attaching an account affidavit "instead of the credit agreement." As the Supreme Court recently clarified in *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, __, 127 S.Ct. 1955, 1964 (2007), pleading under the Federal Rules of Civil Procedure requires that the complaint give "the defendant fair notice of what the claim is and the grounds upon which it rests." The complaint in this case does not provide notice of the theory that the plaintiff now seeks to extract from its vague language. If "a formulaic recitation of the elements of a cause of action will not do," *id.* at 1965, a complaint that contains neither the factual allegations nor the legal conclusions of the asserted claim must certainly fail.

C.

The plaintiff also asks the Court to consider a November 28, 2006 letter the plaintiff allegedly sent asking the defendant to validate the debt, certain invoices from the entity that sold the debt to the defendant, and an affidavit in which he states that the defendant failed to respond to this letter, and he always disputed the amount allegedly owed.  Of course, courts generally do not consider facts outside the complaint when adjudicating a motion under Rule 12(b)(6).  *See, e.g., Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).  An exception exists, however, with respect to "documents referenced by the pleadings themselves that are central to the plaintiff's claim."  *Brown v. Scott*, 329 F. Supp. 2d 905, 909 (E.D. Mich. 2004) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999)).  The only documents referenced in the complaint on file are the state-court summons and complaint and the account affidavit.  Those documents do nothing to advance the validation and ownership claims.

The documents belatedly submitted by the plaintiff can only be considered if the Court converts the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.");  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).  The district court exercises its discretion in determining whether to convert a 12(b)(6) motion into one for summary judgment.  *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004).  However, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d), and therefore "it is 'serious error' for a district court to convert the motion *sua sponte* to a summary judgment motion without notice to parties and without further discovery," *Ball*, 385 F.3d at 719.  In *Ball*, the Sixth

Circuit affirmed a district court's decision to convert a 12(b)(6) motion to one for summary judgment where the defendant had asked for that relief in the alternative, and the plaintiff responded with various materials outside the pleadings. *Ibid.* Here, the circumstances counsel against conversion. The defendant's motion challenges only the legal sufficiency of the complaint, and the plaintiff's new allegations (and the facts they implicate) have just been raised. Although the plaintiff has requested conversion (so the Court would not be guilty of doing so *sua sponte*), the defendant has not had an adequate opportunity to test the plaintiff's evidence through discovery.

Yet even if the Court did convert the motion and examine the issues under Rule 56, the plaintiff would still have a fundamental problem: the evidence he presents – relating as it does to failure to validate and lack of ownership of the debt – is not *material* for summary judgment purposes. A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). Here, the plaintiff has not pleaded claims for failure to validate or lack of ownership; the evidence addressing those claims is simply immaterial given the nature of the complaint on file.

### D.

That brings us to the plaintiff's motion to amend his complaint. Under Federal Rule Civil Procedure 15(a), a party may amend at this stage of the proceedings only after obtaining leave of court. Although the Rule provides that "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), leave may be denied on the basis of undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposing party, *Forman v. Davis,* 371 U.S. 178, 182

(1962); *Duggins v. Steak & Shake, Inc.,* 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts,* 125 F.3d 974, 977 (6th Cir. 1997). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-459 (6th Cir. 2001). The Rule does not establish a deadline within which a party must file a motion to amend. *See Lloyd v. United Liquors Corp.*, 203 F.2d 789, 793 (6th Cir. 1953) (reviewing a district court's denial of a motion to amend after the entry of summary judgment).

Delay alone does not justify denial of a motion brought pursuant to Rule 15(a). *Security Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). However, the party seeking to amend should "act with due diligence if it wants to take advantage of the Rule's liberality." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).

Courts will find that an amendment to a complaint prejudices a party where the amendment will require the party to prepare an additional defense strategy and expend additional resources to defend against new claims. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973).

As mentioned above, a court also may deny a motion for leave to amend when the proposed amendment would be futile. *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980). In other words, if the district court concludes that "'the pleading as amended could not withstand a motion to dismiss,'" the court may deny the motion to amend, thereby saving the parties and the court the expense of having to confront a claim doomed to failure from the onset. *See Head*, 870 F.2d at 1123 (quoting *Martin*, 801 F.2d at 258).

The Court believes that an amendment of the complaint should be refused because the plaintiff is guilty of undue delay, the defendant would suffer prejudice, and the amendment would be futile. Analyzing these grounds in reverse order, the Court notes that the proposed amended complaint differs from the original only in that it alleges a failure to validate the debt. That renders academic the viability of the plaintiff's allegation that the defendant did not own the debt when it filed suit. However, even if the Court were to ignore the plaintiff's failure to propose this amendment and consider the evidence offered by the plaintiff on the point, it would not establish that the defendant violated the FDCPA because it did not own the debt at the time.

With respect to the validation claim, the law is simply not in the plaintiff's favor. Section 1692g of Title 15 governs the procedure for requests for validation. It provides:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, *within thirty days after receipt of the notice*, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing *within the thirty-day period* that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request *within the thirty-day period*, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing *within the thirty-day period* described in subsection (a) of this section that the debt, or any portion thereof, is

disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue *during the 30-day period* referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication *during the 30-day period* may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(a)-(b) (emphasis added). This language makes clear the rule that the consumer's rights (to validation of the debt) and the collector's responsibilities (to validate the debt and cease collection activities) are not triggered unless the consumer files a request for validation within thirty days of receiving notice of the debt. *See Luxenburg v. Equifax Credit Info. Servs.*, 2005 WL 78947, *1, 3 (N.D. Ill. Jan. 12, 2005).

In the proposed amended complaint, the plaintiff alleges no facts regarding the chronology of the validation issue; he simply states that he "sent Defendant a validation notice" prior to the lawsuit, the defendant "received this letter," and the defendant "failed to validate the debt and instead sued Plaintiff in an attempt to collect the alleged debt." Prop. Amend. Compl. at ¶¶ 21-23. This is not sufficient to state a claim under section 1692g, since the obligations imposed by that statute are explicitly tied to the thirty-day period. Even if the Court considers the validation letter itself, which the plaintiff references in the proposed amended complaint, compliance with the time limits cannot be established. The validation letter is dated November 28, 2006. In the opening line, the plaintiff wrote that the notice of debt was dated October 18, 2006. On its face, therefore, over thirty days expired between the notice and the validation letter. It is possible that the plaintiff did

not *receive* the notice until late October (or some other time sufficient to bring him within the thirty-day period), but there are no facts to suggest this and it is inappropriate to engage in this sort of speculation when evaluating the legal sufficiency of one's pleadings. After all, the plaintiff is the master of his complaint. *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 515 (6th Cir. 2003). The proposed amended complaint could not survive a motion to dismiss, and therefore amendment would be futile.

Although no single factor is dispositive, a finding of futility is usually fatal to a request for leave to amend a complaint. *See, e.g., Miller v. Calhoun County*, 408 F.3d 803, 817-18 (6th Cir. 2005). However, in this case, undue delay and prejudice also militate against granting leave to amend. Trial is not presently scheduled in this case (due to the pendency of the defendant's motion to dismiss), but, until recently, it was scheduled for April 24, 2008. Despite requesting leave to amend on the eve of trial, however, the plaintiff offers no excuse for his tardiness. Delay may be excused in the case of newly discovered evidence or a change in the law, but neither of these factors is present here. (To the extent the plaintiff labels the Washington Mutual bills newly discovered evidence, those items are rendered irrelevant by his failure to propose an amendment based on that evidence.) Instead, the plaintiff has been on notice of the deficiency of his complaint since January 2008 when the defendant filed its motion to dismiss. There is simply no excuse for waiting so long to request leave to amend.

Which brings us to prejudice. Although the defendant would likely suffer little prejudice in terms of having to defend against a new claim (the claim, at least as pleaded, is anemic at best), it cannot be discounted completely. The allegation of failure to validate was not foreseeable from the

original complaint, and some discovery, as well as a further motion to dismiss or for summary judgment, would almost certainly be necessitated.

<div align="center">III.</div>

The Court concludes that the complaint fails to state a claim under the Fair Debt Collections Practices Act for which relief can be granted. The plaintiff has agreed to dismiss his state law claims arising from the same transaction. The Court is not persuaded that the proposed amendment to the complaint should be allowed.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt #9] is **GRANTED**.

It is further **ORDERED** that the plaintiff's federal claims are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the plaintiff's motion to amend the complaint [dkt # 26] is **DENIED**.

It is further **ORDERED** that the defendant's motion *in limine* [dkt # 14] is **DISMISSED as moot**.

<div style="margin-left:40%;">s/David M. Lawson_____<br>DAVID M. LAWSON<br>United States District Judge</div>

Dated: May 30, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 30, 2008.

s/Felicia M. Moses
FELICIA M. MOSES